ROLI-BLUE, INC., Appellant, v 69/70TH STREET ASSOCIATES, Respondent.

First Department, September 4, 1986

### APPEARANCES OF COUNSEL

*William Joseph Apuzzo* for appellant.

*Jeffrey Newman* of counsel *(Dolgenos Bergen & Newman,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

On or about August 19, 1981, George Stephanos entered into an agreement with defendant 69/70th Street Associates for the rental of a portion of the ground floor and basement at 1286 First Avenue and a portion of the ground floor in the adjoining building at 1288 First Avenue. Stephanos subsequently assigned the lease, which provided that the premises were to be used as a restaurant and bar, to plaintiff, Roli-Blue, Inc., a corporation which he owned and controlled.

At the time the lease was executed a certificate of occupancy existed for the buildings of which the demised premises are a part, permitting their use as a restaurant. Plaintiff thereafter, at significant cost, undertook a renovation of the demised premises, substantially improving the building and greatly enhancing its value. Having obtained a liquor license and the necessary approvals for the alterations as well as preliminary approval of its application for a public assembly permit, it opened a restaurant, known as Rascal's, which it presently operates at the demised premises.

Beginning in the fall of 1981, defendant also undertook a series of structural alterations in the residential part of the building, at the conclusion of which it applied for a new certificate of occupancy. The Department of Buildings, however, refused and still refuses to issue a new certificate until defendant brings the structure into compliance with code regulations. Since the building lacks a certificate of occupancy, the Department also refuses to issue a final public assembly permit for the restaurant. Inasmuch as the temporary permit has now expired, the restaurant is being operated illegally and plaintiff is subject to continuing fines and closure of the premises.

Plaintiff thereafter commenced this action, premising its complaint upon, *inter alia,* breach of the lease's covenant of quiet enjoyment in that defendant has failed to maintain a certificate of occupancy, thereby impairing plaintiff's ability to obtain a public assembly permit. Alleging that "in the event [it] is prevented from operating as a restaurant" it will sustain damages in the sum of $4,000,000, representing the value of the leasehold, and an additional amount in excess of $20,000 per day for loss of business for the remainder of the lease term, plaintiff seeks a contingent judgment for these sums together with $10,000,000 in punitive damages. It also seeks a declaration that defendant must secure and maintain a certificate of occupancy.

Defendant moved, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the first cause of action alleging breach of the covenant of quiet enjoyment and so much of the second cause of action as sounds in conversion. Recognizing that a cause of action for breach of the covenant of quiet enjoyment does not lie unless the tenant is ousted from possession, plaintiff cross-moved for leave to amend the complaint to the extent of withdrawing that cause of action and substituting therefor, on the same facts, the alternate theory of breach of the lease agreement, and for partial summary judgment on liability on the second and third causes of action. Special Term dismissed the first cause of action and denied the cross motion in its entirety. Although it has appealed from each and every part of Special Term's order, plaintiff argues only that it should have been permitted to amend its complaint. We agree and modify accordingly.

In denying leave to amend, Special Term found the proposed substituted cause of action alleging that defendant "is breaching and willfully continues to breach its statutorily imposed duty and its express and implied agreement to tender to the plaintiff a premises which plaintiff could lawfully occupy" to be conclusory and legally insufficient. Specifically, it held that plaintiff "has failed to specify any statutory duty owed by defendant to [it], the breach of which would be a cognizable claim" or to point to any lease provision to support its claim that defendant had warranted that the demised premises could be used as a restaurant, or for any other purpose. To the contrary, Special Term found, plaintiff's claim was specifically barred by, among other things, the unambiguous terms of clause 50, a typewritten rider, which, *inter alia,* provides, "Landlord does not warrant that the Demised Prem-

ises may be used for the purposes mentioned in this Lease."*
Special Term also relied upon clause 20 of the lease which
states that "neither Landlord nor Landlord's agents have
made any representations or promises with respect to the
physical condition of the building * * * or any other matter
or thing affecting or related to the premises except as herein
expressly set forth".

In our view, Special Term erred in holding that clause 50
barred a contract action on the lease based on the loss of the
certificate of occupancy. While the clause does contain a
disclaimer of any warranty that the demised premises may be
used for the purposes mentioned in the lease, it is doubtful
that, in the absence of a clear indication to the contrary, it
was ever intended to apply to a situation where the landlord,
by his own subsequent affirmative action, renders illegal the
contemplated use of the demised premises. This is especially
so since the very next sentence following the disclaimer states
that if the tenant's occupancy violates any city or State
regulations, the tenant shall cure the violations at its own
cost and expense. Here, the inability to procure a public
assembly permit is completely beyond the tenant's ability to
cure, it being the result of the loss of the certificate of
occupancy, which is, according to the pleadings, solely the
fault of the landlord. As already noted, it appears to be
undisputed that at the time plaintiff or its predecessor took
occupancy there existed a valid certificate of occupancy which
would have permitted the continued use of the demised prem-
ises as a restaurant. Thus, we do not interpret clause 50 as
insulating the landlord from liability for conduct which ren-
ders illegal a tenant's otherwise legal possession and which
occurs subsequent to the commencement of the lease. In our
view, the clause was intended to protect the landlord in the

---

* The full text of clause 50 is as follows: "Landlord does not warrant that
the Demised Premises may be used for the purposes mentioned in this
Lease. In the event that the occupancy by Tenant is or becomes in violation
of the rules and regulations of any City or State Department, Tenant shall
commence curing such violations at Tenant's own cost and expense, within
five (5) days. Landlord shall have the right to give Tenant ten (10) days
notice by registered mail, to commence curing any violations. In the event
Tenant fails to start curing such violations within ten (10) days from the
date of the registry of the registered letter, then Landlord shall terminate
this Lease by giving Tenant three (3) days notice by registered mail. In the
event Tenant does not vacate on or before the third day, Landlord shall
have the right to commence summary proceedings immediately upon such
termination of the Lease after Tenant has failed to remove from the
premises."

event, through no fault of its own, the tenant was unable to obtain the necessary approvals and permits.

Nor is paragraph 20, also relied upon by Special Term, pertinent to the issues. The landlord's disclaimer of any representation or promises is addressed to the physical suitability of the building for a particular purpose, not the legality of a contemplated use. It is clear that while defendant did not warrant the physical condition of the premises for use as a restaurant, both parties obviously understood that the tenant's intended use of the premises as a restaurant was lawful. Indeed, clause 2 expressly provides that the tenant may use the premises as a restaurant.

While plaintiff has failed to support its contention of a statutory requirement that the landlord maintain a valid certificate of occupancy, such a duty may be inferred from the lease itself. Use of the premises as a restaurant was lawful at the lease's inception, and a temporary public assembly permit had been issued. While ordinarily, denial of a license precluding further use of the premises lawfully for the purpose for which the lease was intended does not relieve a lessee of an unconditional promise to pay rent where the parties understood that a license had to be obtained before the premises could be so used *(Raner v Goldberg,* 244 NY 438), a landlord may not render the contemplated use unlawful by his own conduct. An obligation on the part of a landlord to maintain a building's certificate of occupancy will be implied if it may rightfully be assumed that the parties would themselves have imposed such an obligation had their attention been drawn to it, and their conduct inspired by principles of justice. *(Cf. Dermott v State of New York,* 99 NY 101, 109.) Moreover, "every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement." *(Greenwich Vil. Assoc. v Salle,* 110 AD2d 111, 115; *Grad v Roberts,* 14 NY2d 70, 75; *see also, Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79.) Whether, in the circumstances presented, an obligation to refrain from conduct which results in the loss of a building's certificate of occupancy should be implied involves factual questions for resolution at trial. Suffice to say, we find that the proposed amended complaint sets forth a cause of action based upon breach of an implied lease obligation.

Since plaintiff, in seeking leave to amend, submitted a proposed pleading supported by evidence showing by affidavit

as "on a motion for summary judgment" that it "has good ground to support" its breach of contract action (CPLR 3211 [e]; *see, Cushman & Wakefield v John David, Inc.,* 25 AD2d 133, 134-135; *see also, Walter & Rosen v Pollack,* 101 AD2d 734, 735), leave to amend should have been granted.

Accordingly, the order of the Supreme Court, New York County (Felice K. Shea, J.), entered February 4, 1985, which, *inter alia,* denied plaintiff's cross motion for leave to amend the complaint, should be modified, on the law and on the facts, and in the exercise of discretion, to grant said motion, and, except as thus modified, affirmed, without costs or disbursements.

Ross, FEIN, MILONAS and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on February 4, 1985, unanimously modified, on the law and on the facts, and in the exercise of discretion, to grant plaintiff's cross motion for leave to amend the complaint, and, except as thus modified, affirmed, without costs and without disbursements.