OPINION OF THE COURT
James C. Harberson, J.
The respondent claims relief under General Business Law § 349 — "Deceptive acts and practices”. There does not appear to be any reported decision in New York applying this statute to a landlord-tenant relationship. The petitioner denies the law applies to a contract to lease a premises.
General Business Law § 349 (a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.”
*776 Richard Givens says in McKinney’s Practice Commentaries that General Business Law § 349 is based on section 5 of the Federal Trade Commission Act (15 USC §45). He notes: "by its history, is aimed specifically at fraud against consumers. See 1980 McKinney’s Session Laws 1867 (memorandum of Gov. Carey)”. (Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565.)
The court has read McKinney’s Consolidated Laws of NY, Book 1, Statutes, various court decisions from other States as well as several New York decisions pertaining to extension of consumer protection from fraud and deceit.
General Business Law § 349 was passed by the Legislature to protect the consumer from being duped by another person "in the conduct of any business, trade or commerce or in the furnishing of any service”. In deciding whether this protection is available to a tenant or a landlord arising from a lease of real property, we must determine if the intent of the Legislature was to encompass that situation.
The court, in relying on the rules of construction of statutes in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 71, considered various concepts of construction. "Where * * * a construction of a statute is required, it may be reached by reasoning from extraneous connected circumstances, laws, or writings, bearing on the same or a connected matter, or by seeking and applying the probable aim and purpose of the provision.”
The Court of Appeals has determined in Caceci v Di Canio Constr. Corp. (72 NY2d 52) and Park W. Mgt. Corp. v Mitchell (47 NY2d 316) the common law to be inadequate to protect a consumer in today’s rental and housing market. In these cases the court examined the common law and discarded it as a means to assure fair dealing between parties to an agreement.
In Park W. Mgt. Corp. (supra, at 323), the court, after discussing the common law of leaseholds as it evolved based on an agrarian past, where landlord and tenant expectations differed from those of an urban environment, concluded: "Unfortunately, the early attempts of the common law to adapt to the changes encompassed by this societal transition and to mitigate the severity of the rule holding that the tenant’s covenant to pay rent was independent of all but the most basic of the landlord’s obligations proved less than satisfactory.” (See also, Tonetti v Penati, 48 AD2d 25, 30 [where the *777 court stated: "we relegate to the limbo of history the orthodox view of caveat lessee”].)
The Park W. court reviewed the legislative record for Real Property Law § 235-b saying: "[a] residential lease is now effectively deemed a sale of shelter and services by the landlord” (Park W. Mgt. Corp. v Mitchell, supra, at 325); and added: "Since a lease is more akin to a purchase of shelter and services rather than a conveyance of an estate, the law of sales, with its implied warranty of fitness (Uniform Commercial Code, § 2-314) provides a ready analogy” (Park W. Mgt. Corp. v Mitchell, supra, at 324).
In Caceci (supra) the court, nine years after Park W. Mgt. (supra), talked again of the industrial revolution, mass produced goods and how: "the law governing the sale of personal property started to relax the rigid results of the caveat emptor rule, culminating in the recognition of an implied warranty of merchantability” (Caceci v Di Cardo Constr. Corp., supra, at 57).
The court commented on its ongoing role adapting the common law to current needs: "Moreover, significant growth in many diverse areas of the law has emerged from this court’s application of the common-law process to developing, changing and even outdated doctrines.” (Caceci v Di Canio Constr. Corp., supra, at 59.)
In Park W. Mgt. (supra) and Caceci (supra), the Court of Appeals has made the lease or sale of real property subject to the same treatment as a sale of personal property. In comparing its responsibility with that of the Legislature, the court traced the devolution of the court’s expansion of the common law to protect the citizens when evolving circumstances rendered the former relationship between buyer, seller and user out of balance in favor of the seller. In both areas of need the Legislature passed laws, one before — Real Property Law § 235-b, and one after — Laws of 1988 (ch 709) these decisions were made.
A review of similar laws in sister States and opinions is appropriate: "If a sister state * * * has a similar statute, the construction placed on it by its courts may be deemed of assistance in interpreting the domestic law.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 262.)
The respondent lists several cases in his brief from Pennsylvania, Massachusetts and Illinois. The Pennsylvania case (Commonwealth v Monumental Props., 459 Pa 450, 329 A2d *778 812) deals with the Unfair Trade Practices and Consumer Protection Law of Pennsylvania. The issue before the court was: "whether the Consumer Protection law covers allegedly unfair or deceptive practices in connection with the leasing of housing.” (Commonwealth v Monumental Props., 329 A2d, supra, at 812.)
The court held that it did.
The Pennsylvania statute (73 Pa Cons Stat § 201-3) states: " 'Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce * * * are hereby declared unlawful.’ ” (Commonwealth v Monumental Pi-ops., 329 A2d, supra, at 815.)
The court commented that the amicus curiae brief of the Federal Trade Commission:
"correctly points out that Section 5 of the Federal Trade Commission Act, in its application to both antitrust enforcement and consumer protection, has been given a broad and flexible interpretation. * * *
"No support in the federal precursor of the Consumer Protection law can be found for an exclusion for leasing from the law’s broad prohibition of unfair and deceptive practices in market transactions. On the other hand, the legislative history of decisions, interpreting and Federal Trade Commission proceedings under Section 5 of the Federal Trade Commission Act strongly counsel that the leasing of housing is covered by the Consumer Protection Law. * * *
"The purchaser of the bundle (tenant) is as much a consumer as is the purchaser of an automobile, household appliance or any other consumer goods.” (Commonwealth v Monumental Props., 329 A2d, supra, at 818-821.)
The court called the legislation remedial to offset the unequal bargaining position between the landlord and tenant in modern society where housing was scarce and older common-law remedies less than adequate. The Legislature was dealing with a "take it or leave it” quandary the tenant was faced with in dealing with dishonest landlords. The court concluded: "Against this background, the Consumer Protection Law was passed. Fully aware of the pressing need for adequate housing and the unequal economic position of landlord and tenant, the Legislature sought to end unfairness and deception in the conduct of trade or commerce. To refuse to apply the Consumer Protection Law to the leasing of residential housing would needlessly insulate a great percentage of market trans *779 actions from the Law’s salutary antifraud provisions. Only by exalting form over substance could such a course be pursued.” (Commonwealth v Monumental Props., 329 A2d, supra, at 826.)
The respondent cites an Illinois case (Carter v Mueller, 120 Ill App 3d 314, 457 NE2d 1335). In this case the Illinois court found the Illinois consumer Fraud and Deceptive Business Practices Act did apply to a landlord-tenant relationship: "The Act prohibits deception and unfair practices in the 'conduct of any trade or commerce.’ (Emphasis added.) (Ill. Rev. Stat. 1981,ch. 1211/2, par. 262.) Section 1 (f) defines 'trade and commerce’ as 'the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.’ (Ill. Rev. Stat. 1981, ch. 1211/2, par. 261 (f).) The supreme court has indicated that '[tjhis broad language evidences an intent that the Act have correspondingly broad applicability.’ (Scott v. Association for Childbirth at Home, International (1981),88 Ill. 2d 279,284,430 N.E.2d 1012.) 'It has been stated that there is a clear mandate from the legislature to the courts to use the Consumer Fraud Act to the utmost degree to eradicate all forms of deception and unfair business practices.’ (Buzzard v. Bolger (1983),117 Ill. App. 3d 887,893, 453 N.E.2d 1129.)” (120 Ill App 3d, supra, at 321-322, 457 NE2d, supra, at 1341.)
The Illinois court, citing Commonwealth (supra), found that the act applied to the contract. (See also, Commonwealth v DeCotis, 366 Mass 234, 316 NE2d 748.)
In Massachusetts, Illinois and Pennsylvania the courts applied a statute similar in wording and legislative intent to General Business Law § 349 after almost identical findings of societal changes as expounded in Caceci (supra) and Park W. Mgt. (supra). These courts found the concept of consumer protection developed around the sale of personal property was now extended to real estate transactions. Each court saw the need to give a broad interpretation of the statute to effect the remedial intent of the legislation to protect the consumer from fraud and deception: "Thus courts should look at the old law, and the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 95.)
*780 The Court of Appeals in Park W. (supra, at 325) has called the "residential lease * * * a sale of shelter and services” akin to the sale of personal property. There is no question that any sale to a consumer in New York enjoys the protection of General Business Law § 349: "Statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning * * *. Thus[,] * * * the words of a statute are construed with reference to the subject matter and the object sought to be obtained; and that construction is to be preferred which furthers the object, spirit and purpose of the statute.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 96.)
In giving this construction to the statute using as a guide the precepts heretofore outlined from McKinney’s Consolidated Laws of NY, Book 1, Statutes, this decision has given: "effect to the intention of the Legislature in the enactment of the statute (Statutes, § 92).” (Jacques v Richard, 74 Misc 2d 965, 969.)
The day of caveat emptor, caveat lessee and the deceptions of the Simon Legrees are over as a matter of law for the tenants of this State.
It is the decision of this court that General Business Law § 349 does apply to landlord-tenant relationships and the motion to dismiss is denied.