OPINION OF THE COURT
Thomas A. Dickerson, J.
After trial held on March 27, 1995, the court makes the following findings of fact and conclusions of law.
The defendant, Teresa A. McGrath, was the owner of a coop apartment located at 1348 Midland Avenue, Bronxville, New York. The defendant’s employer, the Pitcairn Trust Company, asked her to relocate to Philadelphia, Pennsylvania, for a period of one year. The defendant agreed, decided to rent her apartment for the duration of her absence and placed the following ad in the New York Times: "BRONXVILLE P.O., 2 BR, 2BTH, Mod Kit & Bth Lg. LR., 24hr. gatehouse, Parklike setting, Walk to train & shop * * * $1250. ”
The defendant was a member of the Fleetwood Acres Owners, Inc. (Fleetwood), an owners’ cooperative association. As such she was bound by the Fleetwood Acres proprietary lease which required approval of coop apartment sublets. Prior to placing her ad the defendant neither sought nor obtained approval of a coop apartment sublet.
The plaintiff, Charles B. Yochim, responded to defendant’s ad and entered into a one-year rental agreement commencing August 31, 1994. The plaintiff paid defendant a security deposit of $1,250 together with September’s rent of $1,250. The rental agreement provided that "The tenant must comply with all policies and procedures of Fleetwood Acres and the Landlord”. During negotiations the defendant failed to inform the plaintiff that she was without legal authority to rent her coop apartment.
The plaintiff entered into the rental agreement in good faith relying upon the apparent ability of the defendant to rent her coop apartment. The plaintiff moved his furniture from his old apartment at a cost of $604, purchased shipping boxes at a *13 cost of $66.68, rekeyed the door lock and mailbox lock at a cost of $81.19, installed cablevision at a cost of $159, installed a new carpet at a cost of $261.54 and moved into the apartment on or before September 1, 1994.
On September 17, 1994, a representative of the Fleetwood Board accosted the plaintiff and informed him that he was subletting illegally. The plaintiff, shocked and dismayed, called the defendant for an explanation. The defendant said that she would contact the Fleetwood Board and request approval of the sublet. On September 20, 1994, the defendant sent a letter to the Fleetwood Board belatedly seeking approval of the sublet and stating that ”I do wish to comply with the rules of the board”.
In her letter to the Fleetwood Board the defendant made several false statements. First, the defendant sought to create the impression that the plaintiff was a close, personal friend of some degree of intimacy. The defendant stated that "I have had to make temporary arrangements on very short notice. In the interim I asked Mr. Charles Yochim, someone I have been close to and trusted to watch my apartment during my absence”. In fact, the plaintiff was not a close, personal friend of the defendant and never met her prior to responding to the ad.
Second, the defendant stated that "Mr. Yochim was recently tenured as a Mathematician at Bronxville High School”. In fact, the plaintiff taught at Bronxville Middle School and was not tenured.
Third, the defendant stated that Mr. Yochim "resides in Yonkers with his mother”. In fact, the plaintiff resided in Mohegan Lake, New York.
On September 23, 1994, the Fleetwood Board notified the defendant that it disapproved of her rental agreement and that plaintiff would have to vacate no later than October 1, 1994. "After consideration and discussion the Board of Directors reaffirmed the policy and position on subletting * * * We would further note that the Proprietary Lease prohibits occupancy by \'guests’ or any others absent the Lessee/Shareholder * * * we must advise that the Board * * * requests that the resident occupant at your apartment be removed from the premises immediately and not later than October 1, 1994. ”
The plaintiff paid the defendant rent for the month of October. During October and early November representatives of the Fleetwood Board sought to pressure the plaintiff to *14 vacate the apartment. Plaintiff was advised of the Board’s disapproval of the defendant’s rental agreement. The plaintiff was phoned at his place of employment and told to” get out” of defendant’s apartment. The plaintiff’s name was removed from his mailbox and the door bell.
On November 2, 1994, Fleetwood’s attorneys sent defendant and plaintiff a letter threatening eviction and worse. "Unless the occupants of the apartment vacate by November 15, 1994 we will immediately institute legal proceedings against you to terminate your proprietary lease, evict the illegal tenant and sell your shares. ”
On November 3, 1994, the plaintiff notified the defendant and the Fleetwood Board of his intention to vacate the apartment, of his refusal to pay any additional rent and of the damages he sustained arising from defendant’s misrepresentations. "It has become apparent that despite your assurances to the contrary, I am no longer able to occupy your apartment and maintain a reasonable state of security and habitability * * * the management has begun to harass me, by removing my name from the bells, mailboxes * * * have also received harassing phone calls in my classroom at school, threatening to evict me if I do not leave voluntarily * * * J can no longer live under these conditions. I am suffering from loss of sleep, and mental anguish * * * The openly hostile environment I am now subjected to * * * If I had [been] aware that Board approval would not be forthcoming had you sought it, I would not have agreed to rent the unit. It was not until after we had entered into a lease, that the reality of the situation was openly stated. ”
The plaintiff retained the services of a realtor to find him a new apartment at a cost of $1,250. Eventually, he found a new apartment and vacated the defendant’s coop apartment on December 30, 1994. The plaintiff demanded the return of his security deposit of $1,250. The defendant refused noting that because plaintiff had "derived economic benefit from living in my apartment rent free for two months, I feel the security deposit is mine. ” In vacating defendant’s apartment the plaintiff moved his furniture at a cost of $675, purchased shipping boxes at a cost of $69.15, installed cablevision at a cost of $26.11, and installed a new phone at a cost of $55. And, lastly, the plaintiff was able to sell his recently purchased carpet for $100 but sustained a loss of $161.54.
*15 DISCUSSION
Predicated upon the above the court finds that plaintiff has asserted the following cognizable causes of action against the defendant: (1) breach of contract, (2) breach of the covenant of quiet enjoyment, (3) violation of General Business Law § 349 and (4) fraudulent misrepresentation. The defendant has asserted a counterclaim against the plaintiff seeking rent for the months of November and December.

Breach Of Contract

The plaintiff entered into a rental contract with the defendant whereby the plaintiff would occupy an apartment located at 1348 Midland Avenue, Bronxville, New York, for a one-year period commencing August 31, 1994 and for a monthly rental payment of $1,250 and a security deposit of $1,250. In negotiating the rental contract the defendant failed to disclose that she needed the approval of the Fleetwood Board to sublet her coop apartment to the plaintiff. In essence, the defendant was without legal authority to enter into a rental contract with the plaintiff. The plaintiff fulfilled his contractual obligations under the lease, gave defendant a security deposit and paid defendant the agreed upon rent until he was constructively evicted on or about November 2, 1994.
The defendant had a duty to rent plaintiff an apartment which she was legally empowered to rent. The defendant breached that duty by failing to obtain the approval of the Fleetwood Board (see, e.g., H.B.A. Realty Co. v Miller, 14 AD2d 607 [3d Dept 1961] ["The plaintiff having purported to lease to the defendant property he claimed to possess, but, actually over which he had no control or right to lease, constituted constructive eviction. There was a failure of consideration and had the defendant vacated the premises at that time * * * there would seem to be little doubt that the defendant would be within his legal rights.”]; Bartolomeo v Runco, 162 Misc 2d 485 [1994] [landlord breached duty to rent a legal apartment in compliance with all city codes; punitive damages]).
The defendant also had a duty to deal fairly and in good faith with the plaintiff. The defendant breached that duty (see, e.g., Roli-Blue, Inc. v 69/70th St. Assocs., 119 AD2d 173, 177 [1986] ["Moreover, 'every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions which would deprive the other party of the fruits of the agreement’ ”]; SJR Communications v Plaza Madison *16 Assocs., NYLJ, June 13, 1991, at 27, col 5; 19 HCR 364 [Sup Ct, NY County] [every contract carries with it a duty of good faith and fair dealing]).
There was a complete failure of consideration since defendant, plainly, was without legal authority to rent her coop apartment. The defendant breached her contract with plaintiff and is liable for all appropriate damages flowing therefrom.

Breach Of Covenant Of Quiet Enjoyment

Implicit in the lease agreement between the plaintiff and defendant was a covenant of quiet enjoyment which "is an agreement on the part of a landlord that for the period of the term of the lease the tenant shall not be disturbed in his quiet enjoyment of the leased premises” (2 Rasch, New York Landlord and Tenant — Summary Proceedings § 27.1, at 321 [3d ed]). The breach of a covenant of quiet enjoyment requires actual or constructive eviction (2 Rasch, op. cit., §§ 28.1, 28.21). Constructive eviction arises when the landlord interferes with the tenant’s possession of the premises to such an extent that the tenant is deprived of its beneficial enjoyment. Typically, the causative factors are noise and water damage (see, e.g., Bernard v 345 E. 73rd Owners Corp., 181 AD2d 543 [1992] [noise]; Minjak Co. v Randolph, 140 AD2d 245 [1988] [water damage and sandblasting; punitive damages]; Rockrose Assocs. v Peters, 81 Misc 2d 971 [Civ Ct, NY County 1975] [noise]).
However, a constructive eviction may also occur when, as in the instant case, the landlord does not have legal authority to rent the premises (see, H.B.A. Realty Co. v Miller, 14 AD2d 607 [1961], supra ["The plaintiff having purported to lease to the defendant property he claimed to possess, but, actually over which he had no control or right to lease, constituted constructive eviction”]). Having leased her apartment without coop board approval the defendant willfully caused plaintiff to be subjected to harassment from the Fleetwood Board and threatening letters from their attorneys.
Abandonment of residential premises is no longer a precondition for a breach of covenant of quiet enjoyment (2 Rasch, op. cit, § 28.26). Nonetheless, the plaintiff did abandon defendant’s coop apartment within a reasonable time after being threatened with eviction. On November 2, 1994, the attorneys for the Fleetwood Board demanded that plaintiff leave. On November 3, 1994, the plaintiff notified the Fleetwood Board and defendant of his intention to vacate. Thereafter, plaintiff *17 hired a real estate broker to find another apartment, a new apartment was found and rented and plaintiff vacated on December 30, 1994.
The defendant breached the covenant of quiet enjoyment in the lease agreement (see, e.g., Bartolomeo v Runco, 162 Misc 2d 485 [1994], supra [illegal apartment]; Al’s 334 9th Ave. Corp. v Herbener, 83 NYS2d 676 [Sup Ct, NY County 1948] [illegal apartment]) and is liable for all appropriate damages flowing therefrom.

Violation Of General Business Law § 349

New York State General Business Law § 349 prohibits deceptive and unfair business practices and applies to a wide spectrum of commercial transactions (see, e.g., Andre v Pace Univ., 161 Misc 2d 613 [1994] [educational malpractice]; Rossi v 21st Century Concepts, 162 Misc 2d 932 [1994] [misrepresented cookware]; Vallery v Bermuda Star Line, 141 Misc 2d 395 [1988] [misrepresented cruise vacation]; see also, Moldovan, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509 [1982]), including those between landlords and tenants (see, e.g., Bartolomeo v Runco, supra, 162 Misc 2d, at 490; Frazier v Priest, 141 Misc 2d 775 [1988]).
The elements of a violation of General Business Law § 349 are (1) proof that the practice was deceptive and misleading in a material respect and (2) proof that plaintiff was injured (see, Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 22-A, at 565; McDonald v North Shore Yacht Sales, 134 Misc 2d 910 [1987]; Geismar v Abraham & Strauss, 109 Misc 2d 495 [1981]). There is no requirement under General Business Law § 349 that plaintiff prove that defendant’s practices or acts were intentional, fraudulent or even reckless. Nor is there any requirement under General Business Law § 349 that plaintiff prove that she relied upon defendant’s misrepresentations and deceptive practices.
In this case the defendant willfully misrepresented to plaintiff that she had the legal authority to rent her coop apartment when, in fact, she did not. This representation was false, misleading and deceptive. Plaintiff relied upon this misrepresentation, entered into a one-year lease, incurred substantial expenses, moved into the coop apartment and within two months was ordered to "get out” by the Fleetwood *18 Board. The defendant has violated General Business Law § 349 and is liable to the plaintiff for all damages permitted thereunder.

Fraudulent Misrepresentation

In this case the defendant knew that the Fleetwood Acres proprietary lease, to which she was a party, required coop board approval of all sublets. Notwithstanding this knowledge, the defendant went ahead and entered into a sublease without informing plaintiff that she did not have legal authority to do so. The defendant did not bother to seek the approval of the Fleetwood Board until after plaintiff’s illegal occupancy was discovered. Defendant’s letter seeking approval was filled with false statements seeking to mislead the Fleetwood Board into believing that she and plaintiff shared some degree of intimacy ("close to” and "trusted”) when, in fact, there was none. The defendant’s representation of her legal authority to rent her coop apartment was false, was known to be false and was made to induce the plaintiff to enter into a sublease. The plaintiff relied upon defendant’s misrepresentation, entered into the lease and was constructively evicted and forced to vacate the coop apartment.
The necessary elements of a cause of action for fraudulent misrepresentation are (1) representations, (2) falsity, (3) scienter, (4) reliance and (5) damages (see, e.g., Reno v Bull, 226 NY 546 [1919]; Seymour Winick, Inc. v Ariana Realty Co., 171 AD2d 785 [1991] [cause of action for breach of contract and fraud stated]). All of these necessary elements of a fraud cause of action are met in this case and the defendant is liable to the plaintiff for all appropriate damages arising therefrom.

Defendant’s Counterclaim

Defendant’s counterclaim seeks rent of $2,500 for the months of November and December 1994. The plaintiff was constructively evicted from the coop apartment on or before November 2, 1994. On November 3, 1994, the plaintiff informed defendant of the intolerable living conditions and of his intention to vacate as soon as possible. Plaintiff stayed in defendant’s coop apartment another two months without paying rent until he was able to relocate. Should the plaintiff be forced to pay defendant rent for the months of November and December?
Because of a complete failure of consideration and plaintiff’s constructive eviction, the lease agreement between *19 plaintiff and defendant was a nullity. The defendant had no legal authority to rent her apartment and the plaintiff had no legal right to occupy defendant’s coop apartment. In effect, the plaintiff never had any legal obligation to pay rent to defendant (see, e.g., H.B.A. Realty Co. v Miller, 14 AD2d 607 [1961], supra [constructive eviction; no obligation to pay rent; landlord waived rights]). That plaintiff chose to pay defendant rent for September and October did not create any legal obligation to pay rent for November and December. Without a binding lease agreement approved by the Fleetwood Board it was incumbent upon defendant to evict plaintiff and regain possession of her coop apartment. She chose not to and waived any claim against the plaintiff. Defendant’s counterclaim is dismissed.
DAMAGES
The court finds the defendant liable to the plaintiff on the following causes of action: (1) breach of contract, (2) breach of covenant of quiet enjoyment, (3) violation of General Business Law § 349 and (4) fraudulent misrepresentation.
The court awards the following damages to the plaintiff.
First, actual damages will include $3,572.41 for the return of the security deposit of $1,250 and the expenses incurred by plaintiff in moving into defendant’s coop apartment (moving furniture [$604], shipping boxes [$66.68], rekey door and mailbox [$81.19], cable TV [$159], carpet [$261.54 — $100 (resale) — $161.54] and in finding a new apartment [realtor fee of $1,250]);
Second, pursuant to General Business Law § 349 (h) the court finds that defendant willfully violated General Business Law § 349. Although the court would like to treble plaintiff’s actual damages of $3,572.41, the maximum award permissible (see, Hart v Moore, 155 Misc 2d 203 [1982]) is $1,000, a sum already exceeded by plaintiff’s actual damages;
Third, the plaintiff suffered aggravation, annoyance, harassment and inconvenience because of his constructive eviction and the harassment of the Fleetwood Board. Such damages are appropriate under a breach of contract (see, e.g, Kupferman v Pakistan Intl. Airlines, 108 Misc 2d 485 [1981] [breach of contract]) and under a breach of covenant of quiet enjoyment (see, e.g., Minjak v Randolph, supra, 140 AD2d, at 249-250 [punitive damages]; Bartolomeo v Runco, 162 Misc 2d, at *20 492, supra, [punitive damages]; I.H.P. Corp. v 210 Cent. Park S. Corp., 16 AD2d 461, affd 12 NY2d 329 [1962] [compensatory and punitive damages awarded]). The court awards the plaintiff $250 for his discomfort and aggravation;
Fourth, the court finds the defendant’s misconduct in fraudulently misrepresenting her legal authority to rent her coop apartment to be morally culpable (Walker v Sheldon, 10 NY2d 401 [1961]; I.H.P. Corp. v 210 Cent. Park S. Corp., supra, 16 AD2d, at 462-467; Bartolomeo v Runco, supra, 162 Misc 2d, at 492). Punitive damages are appropriate in this case and are needed to deter other tenants from subletting their coop apartments and misrepresenting their legal authority to do so. The court awards plaintiff punitive damages of $250.
Total damages are limited to the $3,000 jurisdictional amount of this court.
[Portions of opinion omitted for purposes of publication.]