BONNIE S. BEVERLY, Plaintiff and Counterdefendant-Appellee, v. DAVID J. REINERT, Defendant and Counterplaintiff-Appellant (James L. Haderer et al., Third-Party Defendants-Appellees).

Second District   No. 2—92—0121

Opinion filed December 3, 1992.—Rehearing denied February 5, 1993.

Clarence F. Wittenstrom, Jr., and Eric M. Johnson, both of Gromer, Wittenstrom & Meyer, P.C., of Elgin, for appellant.

James F. Best and Sarah E. Senechalle, both of Fraterrigo, Best & Beranek, of Wheaton, for appellee Bonnie S. Beverly.

Gilbert X. Drendel, Jr., *pro se*, and Eugene P. Sullivan, both of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora, for other appellees.

JUSTICE McLAREN delivered the opinion of the court:

The defendant and counterplaintiff, David J. Reinert (defendant), appeals from a trial court order dismissing his counterclaim against the plaintiff, Bonnie Beverly, and his third-party complaint against third-party defendants, James L. Haderer and Gilbert X. Drendel, Jr. The defendant alleged that the plaintiff and third-party defendants invaded the defendant's privacy by publicly disclosing private information. The trial court held that the counterclaim and third-party complaint failed to state a cause of action (see Ill. Rev. Stat. 1991, ch. 110, par. 2—615).

On appeal, the defendant argues that, according to the standards set forth in *Miller v. Motorola, Inc.* (1990), 202 Ill. App. 3d 976, his counterclaim and third-party complaint stated causes of action for invasion of privacy.

The plaintiff and the third-party defendants argue that the trial court properly dismissed the complaint because (1) the allegation that Drendel, the plaintiff's attorney, transmitted certain information to the defendant's attorney, and ultimately to Haderer, the plaintiff's brother, via facsimile machine (fax) did not amount to an allegation that such information was publicly disclosed; and (2) the information allegedly disclosed was not private. The plaintiff and third-party defendants also request that we find this appeal frivolous and that we impose appropriate sanctions on the defendant (see 134 Ill. 2d R. 375(b)).

We agree with the trial court that the defendant failed to state a cause of action for public disclosure of private information. However, as Illinois law has not firmly established the parameters of this tort, we decline to hold that the appeal is frivolous.

The plaintiff began this litigation with a complaint to dissolve a partnership between her and the defendant. She alleged the following. On October 5, 1989, she and the defendant entered into an agreement, later

amended, for the purchase and management of a residence at 918 Glenmore in Elgin (918 Glenmore). In accordance with the agreement, they purchased 918 Glenmore, obtained a mortgage, made payments on the mortgage and other relevant expenses. As partners, they managed 918 Glenmore. Since March 19, 1991, the plaintiff and the defendant had been irreconcilably deadlocked over the management of 918 Glenmore; the plaintiff wished to sell the property and the defendant wished to lease it to a third party or parties. Because the defendant would not consent to a dissolution, the plaintiff requested that the court dissolve the partnership, divide the proceeds equitably, and require the defendant to account for all partnership dealings and transactions.

In a second count, for injunctive relief, the plaintiff, a school teacher, alleged that the defendant had attempted to embarrass her in her place of employment and to cause her to be terminated as a teacher. Specifically, she alleged that the defendant: (1) wrongly accused her of removing some of his personal files from 918 Glenmore; (2) unjustifiably demanded the plaintiff's personnel files from the personnel director of her school district; (3) authorized his attorney to inform the plaintiff's attorney by letter of May 9, 1991, that the plaintiff's removal of the defendant's files could be "official misconduct" which might cause her to be terminated; (4) on May 17, 1991, wrote the plaintiff that he intended to disclose to the local board of education and to the press "all of the letters of communication from both attorneys, the police report, letters from you, and documentation from [the mortgage lender] which I think tells the story of a poor school teacher [guilty of improper conduct]."

The defendant moved to dismiss the first count of the complaint and filed an answer to the second count. He also filed a three-count counterclaim against the plaintiff. Count I alleged that the plaintiff had breached an agreement under which she was to pay half of the monthly principal and interest on 918 Glenmore; that she had failed to pay real estate taxes and do maintenance work on the property as agreed; and that, on March 17, 1991, the plaintiff had moved out of 918 Glenmore, saddling the defendant with plaintiff's share of the obligations since then. Count II alleged that the plaintiff had not fulfilled certain obligations of a contract to work for the defendant's sporting goods store. Count III alleged that she unlawfully took various of the defendant's possessions from 918 Glenmore and converted them to her own use.

Finally, the defendant filed a "Counterclaim and Third-Party Complaint for Invasion of Privacy" against the plaintiff and third-party defendants. Defendant alleged that, on May 10, 1991, one or more of these three people sent a fax from Drendel to the defendant's attorney,

Clarence Wittenstrom, Jr. The fax states in part that (1) the defendant's contact with the regional school board was a malicious attempt to interfere with the plaintiff's employment, and (2) the plaintiff planned to sue the defendant for this action and for his defamatory claims that the plaintiff had breached contracts and removed his personal files.

The defendant alleged that, on May 9, 1991, Drendel received a fax from the defendant's attorney. On information and belief, the defendant alleged that either the plaintiff or Haderer, without defendant's permission, faxed a copy of this letter to Drendel. The defendant alleged finally that, on April 12, 1991, one or more of plaintiff and third-party defendants faxed a letter from Drendel to the defendant's attorney. In the April 12, 1991, letter, Drendel informed Wittenstrom that the defendant's conduct had forced plaintiff to vacate 918 Glenmore; that the plaintiff wished that the house be sold and did not authorize the defendant's attempts to rent out the house; and that the plaintiff would not pay for home repairs that were unnecessary and done without her consent.

The defendant asserted that these communications interfered with his privacy because, as fax technology is unreliable, the communications may have gone to the wrong parties (as a result of mistransmission) or may have been picked up by outside parties with proper receiving equipment. The defendant asserted that the unauthorized transmission and possible dissemination to unintended parties of the faxes had caused him to fear that he would lose the respect of those who knew him.

Attached as an exhibit was the defendant's affidavit, stating that the defendant's marriage to Dianne Reinert had been dissolved by judicial order on May 20, 1988; that some time in 1987, the plaintiff and the defendant had become lovers; that on or about August 15, 1987, the plaintiff started employment with the defendant's sporting goods store; that, on October 6, 1989, the plaintiff and the defendant entered into a trust agreement to purchase 918 Glenmore and take out a mortgage; that on or about October 26, 1989, the plaintiff and her three sons moved into 918 Glenmore; that the defendant built certain improvements to the house and kept his business records there; and that the defendant and the plaintiff cohabited at 918 Glenmore until the plaintiff moved out on March 17, 1991.

The plaintiff and third-party defendants moved to dismiss the invasion of privacy claims. They argued that the faxes were not communications to the public at large or to persons with whom the defendant had a special relationship; that the defendant had alleged only that the faxes could have been misdirected, not that any outside parties had actually

received the transmissions; and that any facts disclosed were the subject of later litigation and thus not private.

The trial court dismissed the counterclaim and third-party complaint. The defendant moved to reconsider, submitting a proposed amended pleadings on his invasion of privacy claims.

The amended pleadings alleged that, before the plaintiff initiated the litigation, one or more of the plaintiff and third-party defendants faxed letters from Drendel to defendant's attorney. The letters were dated April 12, 1991, May 10, 1991, and May 24, 1991. On information and belief, the defendant alleged that these faxes were broadcast via satellite. Also on information and belief, the defendant alleged that the plaintiff faxed her letter of May 9, 1991, to Drendel from the offices of her employer, the school district.

The defendant alleged in his amended pleading that the faxes publicized highly private and sensitive matters to "the general public and/or to a particular public," *i.e.*, Haderer. These sensitive matters included (1) the defendant's contact with the regional school superintendent; (2) the plaintiff's threat to sue the defendant for interference with her employment; (3) that the defendant and plaintiff owned a "love nest" at 918 Glenmore; and (4) that the defendant pursued a romantic relationship with the plaintiff.

The amended pleadings alleged that these matters reached members of the public including (1) secretaries in Drendel's and Wittenstrom's offices, who broadcast the faxes and thus had special access to the matters contained therein; (2) Haderer, the plaintiff's brother, whose knowledge of the private matters was "embarrassing and devastating" to the defendant; and (3), on information and belief, unknown individuals in the school district office or Haderer's insurance office (wherever the plaintiff faxed her May 9, 1991, letter) and in Drendel's law office.

On information and belief, the defendant alleged further that the faxes were sent via satellite and were intercepted by persons whose personal computers were equipped to enable them to receive such transmissions. The defendant alleged that fax transmission is not established as reliably confidential, as faxes are often delivered to the wrong persons.

In addition to the exhibits attached to his original pleading, the defendant attached a copy of the May 23, 1991, fax from Drendel to Wittenstrom. In this fax, Drendel touched on the last two of the four allegedly private matters noted above. Also, Drendel stated that the plaintiff had none of the defendant's belongings. Haderer and others had helped her move out of 918 Glenmore, and any belongings they had removed inadvertently had been returned to the defendant. Drendel also reminded Wittenstrom that the defendant's attempts to discredit the

plaintiff through the press or the board of education could result in the plaintiff taking legal action.

The court denied the defendant's motion to reconsider and found that there was no just reason to delay enforcement or appeal of the order (see 134 Ill. 2d R. 304(a)). The defendant timely appealed.

The public disclosure of private information is one species of the tort of invasion of privacy. (*Miller*, 202 Ill. App. 3d at 978; Restatement (Second) of Torts §652A, at 376 (1977).) We agree with the parties that the first district case of *Miller* (202 Ill. App. 3d 976) is the principal authority in Illinois on the elements of this cause of action.

In *Miller*, the plaintiff alleged that her employer had invaded her privacy when, without her authorization, the employer told her co-workers that she had undergone mastectomy surgery. The circuit court dismissed her complaint on the ground that she had failed to state any cause of action for the invasion of privacy. The appellate court reversed and remanded the cause for trial. Insofar as relevant here, the appellate court held that the plaintiff had adequately pleaded a cause of action for the public disclosure of private information.

■■ *Miller* held generally that, to state a cause of action for the public disclosure of private facts, a plaintiff must allege that (1) the defendant published, (2) private (not public) facts, and (3) the matter published was such that the publicity would be highly offensive to a reasonable person. (*Miller*, 202 Ill. App. 3d at 978.) In *Miller*, the defendant conceded that the plaintiff had met the second requirement, and the court concluded without difficulty that, as the matter disclosed was a personal and sensitive one, the plaintiff had adequately pleaded the third element of the tort. Thus, *Miller* focused its discussion on what a plaintiff must allege to satisfy the requirement of publicity.

*Miller* adopted a modification of the Restatement's definition of publicity. Under the Restatement test, there is no "publicity" unless "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." (Restatement (Second) of Torts §652D, Comment *a*, at 384 (1977).) Under *Miller*, egregious conduct resulting in disclosure to a limited audience is actionable if "a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed [such that] the disclosure may be just as devastating to the [plaintiff]." *Miller*, 202 Ill. App. 3d at 980.

In support of this flexible standard, *Miller* cited *McSurely v. McClellan* (D.C. Cir. 1985), 753 F.2d 88, and *Beaumont v. Brown* (1977), 401 Mich. 80, 257 N.W.2d 522.

In *McSurely,* the Federal appellate court ruled that under the particularly egregious facts of the case the coercive disclosure of highly sensitive and personal matters to an audience of a single person was actionable. There, the plaintiffs, husband and wife Alan and Margaret McSurely, sued various Kentucky and Federal officials on several grounds. One was invasion of the wife's privacy. Federal investigators seized the wife's personal papers, including love letters from before her marriage from columnist Drew Pearson. These letters revealed intimate details of the romance between Pearson and the woman Pearson called "Dearest Cucumber." The Federal investigator then stood next to Alan McSurely, forcing him to read these letters and other of his wife's personal papers of which he had previously been unaware. The revelations embarrassed both plaintiffs and eventually helped to undermine their marriage.

In discussing the invasion of privacy claim, a matter of State law, *McSurely* recognized that Kentucky courts were flexible in applying the Restatement test for publicity. "Egregious conduct" was actionable even where it did not precisely fit the Restatement categories; indeed, even publication to a single person could be actionable. (*McSurely,* 753 F.2d at 112.) Such was the case here, where the disclosure was particularly cruel and coercive, involved extraordinarily intimate aspects of the wife's past, and served no legitimate purpose.

Similarly, *Beaumont* held that the circumstances are relevant to a determination of whether private facts have been "publicized." Thus, disclosure to a single person could be actionable "publicity" given strong enough circumstances. In *Beaumont,* the plaintiff was a member of the United States Army Reserve. The defendants, his employers, wrote a letter to the army reserve. These letters severely criticized the plaintiff's job performance and character. The supreme court of Michigan held that the defendants were not entitled to summary judgment. The court explained that the plaintiff had raised an issue of fact as to whether disclosure to the army reserve administration constituted "publicity." The court rejected a "numbers game" as a test of "publicity." (*Beaumont,* 401 Mich. at 104, 257 N.W.2d at 531.) It reasoned that, even though the derogatory letter was itself addressed only to a single bureaucrat, the plaintiff raised the inference that the letter circulated through the bureaucracy and resulted in official action against him.

*Beaumont* stressed that, in a determination of whether certain information has been "publicized," the relationship between the audience and the plaintiff is at least as important as the size of the audience. Thus, "[a]n invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure." *Beaumont*, 401 Mich. at 105, 257 N.W.2d at 531.

Citing the language we have quoted, the *Miller* court held that the plaintiff had stated a cause of action for the public disclosure of private facts. Although the plaintiff's fellow employees could not be equated with the general public, the disclosure of intimate personal matters to people with whom she had such a close and distinctive relationship satisfied the requirement of "publicity." The court stressed that this special relationship could make even the relatively limited disclosure particularly embarrassing or devastating to the plaintiff. *Miller*, 202 Ill. App. 3d at 976-77.

We now apply *Miller* to the case at bar. A reviewing court should affirm the dismissal of a pleading for failure to state a cause of action only if no set of facts based on the pleading will entitle the claimant to relief. (*Bank of Northern Illinois v. Nugent* (1991), 223 Ill. App. 3d 1, 9.) It is clear to this court that all the well-pleaded facts of the counterclaim and third-party complaint do not amount to a cause of action for the public disclosure of private facts. We believe that the defendant's pleadings are legally deficient as to all three elements of the tort.

■ First, we believe the trial court correctly decided that, as a matter of law, the defendant did not sufficiently allege the *public* disclosure of private facts. We need not plunge into a discussion of the comparative reliability of mail and fax communications. In this regard, the defendant has alleged no more than the *possibility* that unknown individuals might have accidentally received or perhaps eavesdropped upon the otherwise private and confidential communications between the plaintiff's attorney and the defendant's attorney. Such possible interception by nobody in particular constitutes neither disclosure to the public (as the Restatement requires) nor disclosure to a limited "public" with whom the defendant might have a special relationship (the *Miller* test).

That secretaries in the attorneys' offices helped to broadcast such faxes cannot reasonably support the defendant's claim of "pub-

licity." Such clerical workers stand in no special relationship to the defendant. Equally as important, to allow the defendant to characterize such transmission as "publicity" would make practically *any* confidential correspondence between law offices actionable. To make such legitimate and essentially private communications actionable invasions of privacy would be an absurd and intolerable expansion of the tort. Because the free flow of information is important to our society, courts should proceed with caution in defining what communications constitute invasions of privacy. *Leopold v. Levin* (1970), 45 Ill. 2d 434, 440; *Bradley v. Cowles Magazines, Inc.* (1960), 26 Ill. App. 2d 331, 334.

Finally, the alleged disclosure to the *plaintiff's* brother does not constitute actionable publicity. We find it remarkable that the defendant would sue his former paramour on the basis that he had a "special relationship" with *her* brother. Moreover, the exhibits upon which the defendant relies make the conclusion inescapable that Haderer learned little or nothing of which he was not already well aware, given that he removed many of her belongings from the "love nest" at 918 Glenmore.

■ The defendant's pleadings also fail to allege that *private* facts were disclosed, thus leaving the second element of the cause of action unsatisfied as a matter of law. We note that, insofar as the defendant alleges that faxes from the plaintiff's attorney to his attorney may constitute an invasion of his privacy, the defendant, by authorizing his own attorney to send the plaintiff's attorney a fax, ought to have reasonably foreseen the allegedly tortious communication as a response. We find it ironic that the defendant claims personal privacy rights (particularly *vis-a-vis* the plaintiff) in his communications with public officials regarding plaintiff's employment records—particularly as the defendant himself threatened to disclose sensitive information, involving the parties' personal relationship, to the school board and to the mass media.

● 4 Finally, we hold that the defendant's pleadings failed to raise the third element of the tort of public disclosure of private information, *i.e.*, that the matter made public was highly offensive to a reasonable person (see *Miller*, 202 Ill. App. 3d at 978). As we have noted earlier, the defendant's own disclosures or threatened disclosures are the cause of most if not all of the communications he now claims are highly offensive. This is not a case where one party has gratuitously publicized matters in which another party had a legitimate expectation of privacy. From the defendant's own pleadings and exhibits, we conclude that he has failed to allege that either the

plaintiff or the third-party defendants made disclosures that he could reasonably find highly offensive.

Having concluded that the trial court properly dismissed the defendant's counterclaim and third-party complaint for invasion of privacy, we now turn to the request by the plaintiff and the third-party defendants for sanctions on appeal. Pursuant to Supreme Court Rule 375(b) (134 Ill. 2d R. 375(b)), a reviewing court may impose sanctions against a party for an appeal which is either frivolous or not taken in good faith. An appeal will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law. (134 Ill. 2d R. 375(b); *State Farm Fire & Casualty Co. v. Miller Electric Co.* (1992), 231 Ill. App. 3d 355, 360.) An appeal will be deemed to have taken for an improper purpose if the primary purpose of the appeal is to delay, harass, or cause needless expense. 134 Ill. 2d R. 375(b).

Rule 375(b) sanctions are penal and should be applied only to those cases falling strictly within the terms of the rule. (*In re Marriage of Sykes* (1992), 231 Ill. App. 3d 940, 949-50.) We appreciate the misgivings with which the plaintiff and the third-party defendants view the defendant's motives for bringing this appeal. We also must state that, at best, the defendant's arguments on appeal approach frivolity, as they find scant support in existing law.

Alternatively, the tort of public disclosure of private information has received very little definition or elaboration from the courts of Illinois. The appeal is from a dismissal for failure to state a cause of action, and thus we are called to make an independent ruling of law rather than a deferential review of a discretionary trial court ruling. Under these circumstances, we choose not to find this appeal frivolous.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.