**BRITAMCO UNDERWRITERS, INC., Respondent,**

v.

**A & A LIQUORS OF ST. CLOUD, et al., Respondent,**

**Thomas Eul, Appellant.**

No. C7–02–327.

Court of Appeals of Minnesota.

Aug. 20, 2002.

Amy J. Doll, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chtd., Morris, MN, for appellant.

Peter Lind, Steven D. Pattee, Minneapolis, MN, for respondent Britamco Underwriters.

Thomas P. Melloy, Hall & Byers, P.A., St. Cloud, MN, for respondent A & A Liquors.

Considered and decided by RANDALL, Presiding Judge, HANSON, Judge, and HUDSON, Judge.

## OPINION

R.A. RANDALL, Judge.

In this dram-shop action, appellant moved for a declaration that he was entitled to loss-of-means-of-support coverage under the liquor establishment's liquor-liability policy for the reduction in his standard of living pursuant to Minn.Stat. § 340A.801 (2000). The district court denied his motion, and this appeal followed. Respondent also filed a notice of review, contending that appellant did not have standing to bring this declaratory-judgment motion and that this action is not the appropriate vehicle to present this claim because appellant can proceed by execution on his judgment against the liquor establishment and garnishment of the insurance policy. We affirm.

## FACTS

In June 1998, appellant Thomas Eul sued respondent A & A Liquors of St. Cloud (Tom's Bar), Centennial Liquor Shoppe, Eugene Myers, David Williams, and Allen Smith, alleging assault and battery by Myers, Williams, and Smith and dram-shop liability on Tom's Bar and Centennial. At the time of the incident, respondent Britamco Underwriters, Inc. insured Tom's Bar under a liquor-liability policy for claims arising under the Minnesota Civil Damages Act. In November 1998, the district court granted default judgment against Tom's Bar and awarded Eul damages of $225,000, including $65,404 for medical expenses and $56,680 for past and future loss of earnings. This court affirmed the district court's refusal to vacate the default judgment. *Eul v. A & A Liquors of St. Cloud, Inc.,* 1999 WL 809744 (Minn.App.1999). Britamco's policy pro-

vides coverage for $50,000 per person for bodily injury and $50,000 per person for loss of means of support.

In July 1999, Britamco sought a judgment declaring that it was not responsible for defending or indemnifying Tom's Bar for the underlying claim. Eul intervened to defend against the action. The district court granted summary judgment in favor of Britamco, finding that Britamco had sustained actual prejudice due to the failure of Tom's Bar to notify it of the claim in a timely manner. This court reversed the district court's grant of summary judgment, concluding that because "Britamco did not reserve its rights in a timely manner, it is now estopped from denying coverage." *Britamco Underwriters, Inc. v. A & A Liquors of St. Cloud, Inc.,* 2001 WL 379028 (Minn.App.2001), *review denied* (Minn. Jun. 27, 2001).

After remand, in May 2001, Eul brought a motion for partial summary judgment, asking the court to declare that coverage for "loss of means of support" was available to cover his damages of lost income and wages, "in addition" to his right to claim up to the policy limits for other bodily injuries, under the bodily-injury portion of the policy. Britamco responded, asserting that (1) Eul must commence a garnishment action to present his argument to the court; (2) Eul's intervention only permits him to file a response to Britamco's motion for summary judgment; and (3) Eul cannot make a claim for lost means of support because that claim is reserved for dependents.

The district court denied Eul's motion for summary judgment, concluding that lost income and wages by the injured party are not considered loss of means of support as contemplated by Britamco's insurance policy. This appeal followed.

## ISSUE

Did the district court err in concluding that Eul may not recover for "loss of means of support" under the Civil Damages Act or Britamco's policy?

## ANALYSIS

On an appeal from summary judgment, an appellate court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A district court shall grant a motion for summary judgment when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that no genuine issue of material fact exists and that either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Because material facts are not in dispute, we consider whether the district court erred in its application of the law.

### A. Standing

■■■ Britamco asserts that Eul lacks standing to bring a motion for summary judgment because Eul lacks contractual privity with Britamco and because Eul did not serve an answer in intervention and thus has not made an official appearance. We disagree. Whether a party has standing to sue is a question of law, which appellate courts review de novo. *Joel v. Wellman*, 551 N.W.2d 729, 730 (Minn.App. 1996), *review denied* (Minn. Oct. 29, 1996).

■■ Britamco's argument is without merit. Tom's Bar assigned its rights under the insurance contract to Eul. A "valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned." *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814, 818 (Minn. 1985). In effect, the assignee "stands in the shoes of the assignor." *Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 29 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993). Moreover, Britamco cites no authority for its argument that Eul has not made an official appearance in this action. We find no error in the district court's conclusion that because Tom's Bar assigned all of its interest in the underlying policy to Eul, Eul has standing to litigate the coverage issues just as Tom's Bar would have standing.

### B. Proper Procedural Vehicle to Challenge Issue

■■ Britamco argues that Eul must commence a garnishment action supplemental to the underlying action in order to present this argument to the court, citing *Anderson v. St. Paul Fire & Marine Ins. Co.*, 414 N.W.2d 575, 577 (Minn.App.1987). But *Anderson* does not support Britamco's argument. In *Anderson*, this court determined that where an injured plaintiff had not obtained a judgment against the tortfeasor, the plaintiff could not bring a direct action against the insurer (the direct-action rule). *Id.* at 576. Here, Eul has obtained a default judgment against Tom's Bar. Moreover, *Anderson* explicitly recognized that a plaintiff could contest the question of insurer liability after judgment has been established or, had the defendant tortfeasor chosen to contest the insurer's denial of coverage, the plaintiff could have joined that suit before a determination of liability on the merits. *Id.* at 577. *Anderson* does not dictate that a garnishment action is the *only* means by which a plaintiff can obtain a judgment against the tortfeasor's insurer.

Additionally, Minn.Stat. § 571.71 (2000), which authorizes garnishment proceedings by creditors, states that "a creditor *may* issue a garnishment summons as provided in this chapter." (Emphasis added). The

statute does not *require* that a garnishment action be commenced and does not state that the statute is the sole remedy available to a judgment creditor. Britamco instituted this declaratory action to determine coverage under the policy. No point would be served by requiring Eul to file a separate garnishment action. We conclude the district court did not err in determining that Eul did not need to file a garnishment action.

## C. "Loss of Means of Support"

Eul argues that the district court erred by granting summary judgment in favor of Britamco and concluding that under the Civil Damages Act, Eul may not recover for "loss of means of support" in addition to bodily-injury damages.

■■■ Interpretation of insurance policy provisions required by statute involves questions of law, to be reviewed de novo. *Nathe Bros., Inc. v. American Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn.2000). Interpretation of the Civil Damages Act is a question of law, which an appellate court reviews de novo. *Koehnen v. Dufuor*, 590 N.W.2d 107, 109 (Minn.1999).

■■■ The Civil Damages Act (CDA), adopted in 1911, is a creature of statute, has no common-law counterpart, and is strictly construed. *Whitener ex rel. Miller v. Dahl*, 625 N.W.2d 827, 831, 833 (Minn. 2001). The CDA creates a cause of action for a person who is injured by another's intoxication against the person who caused the intoxication by illegally selling alcoholic beverages. *Brua v. Olson*, 621 N.W.2d 472, 474 (Minn.App.2001), *review denied* (Minn. Mar. 27, 2001). The CDA is both penal and remedial because

> [w]hile the statute serves to punish an offending vendor and deter others from making illegal sales of liquor, it also serves to compensate those who would

under ordinary circumstances or other tort principles obtain no recovery for their injuries.

*Hannah v. Chmielewski, Inc.*, 323 N.W.2d 781, 784 (Minn.1982) (citation omitted). To insure that injured persons and persons deprived of support have a chance to receive compensation, the CDA requires a liquor establishment to carry an insurance policy that contains minimum limits for both bodily injury *and* "loss of support." Minn.Stat. § 340A.409, subd. 1(1) (2000) (emphasis added). A liquor establishment must provide "at least $50,000 of coverage because of bodily injury to any one person in any one occurrence," and "$50,000 for loss of means of support of any one person in any one occurrence." *Id.*

■■■ Britamco's policy provides the coverage limits that are required by law, $50,000 per person for bodily injury and $50,000 per person for loss of means of support. Britamco's policy provides that it will

> pay those sums that [Tom's Bar] become legally obligated to pay because of injury to which this insurance applies if liability for injury arises out of the selling, serving or furnishing of any alcoholic beverages in violation of Section 340A.801.

If the CDA confers upon Eul his own claim for loss of means of support, Britamco's policy cannot preclude such coverage because insurance coverage required by law must not be omitted from a policy, and policy provisions must not contravene applicable statutes. *American Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983).

■■■ Eul asserts that he can claim loss-of-means-of-support damages for himself under the CDA. We disagree. Minnesota's Civil Damages Act provides a limited cause of action:

[a] spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn.Stat. § 340A.801, subd. 1 (2000). Minn.Stat. § 340A.801, subd. 1, which is the only provision that confers a cause of action under the CDA, does not include the injured person. Although the statute does not define "means of support," we agree with the district court that the phrase "loss of means of support" incorporates within it the requirement that a claimant be a dependent. *See Jones v. Fisher*, 309 N.W.2d 726, 730 (Minn.1981) (recognizing that "[d]amages under the dram shop act, in case of death, are limited to loss of 'means of support' to decedent's dependents").

Eul argues that Minnesota law recognizes that a person provides support for one's self. *See, e.g.*, Minn.Stat. § 518.552, subd. 1(b) (2000) (stating court may award maintenance if spouse is unable to provide adequate self-support). But as Britamco points out, under the CDA and Britamco's policy, Eul's damages for loss of wages, as well as future loss of earning capacity, are properly categorized and can be compensated as bodily-injury damages under the bodily-injury portion of the policy in question. The policy defines "injury" as "all damages because of bodily injury and property damage, and including damages for care, loss of services or loss of support." Appellant concedes that under the bodily-injury portion of the policy, loss of earning capacity, partial disability, full disability, lost wages, and diminution of wages, loss of future earning potential can all be included under bodily injury. He simply wants to carve his loss of income and wages out of bodily-injury coverage, collect bodily-injury compensation for other damages, and then go back and collect the lost income and wages under the "loss of support" coverage. Appellant wants his total target for insurance coverage to be $100,000 (two times $50,000) rather than $50,000.

We understand appellant's argument, but we disagree. Bodily-injury damages under the CDA are broadly defined. There is no need for a second category called "loss of support" to help an individual with no dependents, such as Eul. It is too clear to be contested that Minnesota law covers Eul's loss of income and loss of wages under the broad category of bodily injury. *See* 4 *Minnesota Practice*, CIVJIG 45.55 (stating general damage instructions in categories 90 and 91 should be used in CDA actions); 4A *Minnesota Practice*, CIVJIG 90.10 (1999) (stating damages are sums of money that will compensate a person who has been injured and may include past and future harm); 4A *Minnesota Practice*, CIVJIG 90.25 (1999) (defining calculation for loss of future earning capacity). Finally, as Britamco and the district court correctly noted, no reported Minnesota cases have ever granted "loss-of-means-of-support" damages to the injured "breadwinner." Rather, the loss-of-support cases have involved dependents.

We recognize that with the CDA's modest limit of $50,000 for bodily injury, Eul legitimately has a lack-of-coverage problem. Eul alleged total damages of $225,000, including $65,404.04 for medical expenses and $56,680 for past and future loss of earnings. However, nothing in the history of the CDA remotely permits Eul to convert lost wages to loss-of-support

damages and stack those on top of bodily-injury damages.

The legislature created the cause of action authorized by the CDA, and the legislature is free to expand or reduce the rights provided by the CDA. *K.R. v. Sanford,* 605 N.W.2d 387, 391 (Minn.2000). But the remedy prescribed under the CDA "cannot be enlarged except by further legislative enactment." *Beck v. Groe,* 245 Minn. 28, 44, 70 N.W.2d 886, 897 (1955) (citations omitted).

■ We conclude, as did the district court, that loss-of-income damages for the injured "breadwinner" under Minn.Stat. § 340A.801, subd. 1 (and thus Britamco's policy), fall under the bodily-injury coverage-portion of the dram-shop policy. The CDA does not grant Eul, the injured party, a separate claim for loss of support apart from and in addition to his claims for bodily injury. The district court properly concluded that Britamco's policy does not provide separate coverage for Eul's claim for loss of income and loss of wages under the loss-of-means-of-support portion of the policy.

Britamco also filed a notice of review challenging the district court's award of attorney fees to Tom's Bar. Because the parties have settled the matter, we do not address the issue.

### DECISION

Minn.Stat. § 340A.801, subd. 1 (2000), does not provide coverage for Eul's loss-of-means-of-support claim because claims for loss of means of support under the Civil Damages Act are limited to dependents. The district court properly granted summary judgment in favor of Britamco.

**Affirmed.**