Sandra **BODAH, et al., on their own behalf and on behalf of all others similarly situated, Respondents,**

v.

**LAKEVILLE MOTOR EXPRESS, INC., Petitioner, Appellant.**

No. C5–02–276.

Supreme Court of Minnesota.

June 26, 2003.

OPINION

ANDERSON, RUSSELL A., Justice.

In this case, the court of appeals reversed the district court's order dismiss-

ing, on the pleadings, the complaint of respondents Sandra Bodah, Wayne Senne, John Tonsager, and Mark Urick (respondents). On review, we consider an issue of first impression: whether allegations in the complaint—that appellant Lakeville Motor Express, Inc.'s (LME) dissemination by facsimile of 204 employee names and social security numbers to 16 related or associated terminal managers in six states and "[t]hat upon information and belief the private information has not been redacted or erased and is still being shared or is accessible in general"—constitute the requisite "publicity" under Minnesota law to support a claim for publication of private facts, an invasion of privacy tort. We adopt the definition of "publicity" from the Restatement (Second) of Torts § 652D cmt. a (1977). Further, we hold that the complaint does not allege the requisite "publicity" to support a claim for publication of private facts. We reverse.

The facts recited in the pleadings may be summarized as follows.[1] LME, a trucking company based in Minnesota, transports shipments throughout the upper Midwest, including Minnesota, Illinois, Iowa, North Dakota, South Dakota, and Wisconsin. In distributing freight, LME utilizes trucking terminals that are either owned by LME or its agents or are owned by independent trucking companies.

On January 4, 2001, LME Safety Director William Lowell Frame (Frame) sent a facsimile transmission to the terminal managers of 16 freight terminals. The cover sheet was addressed to "Terminal Managers," not to named individuals, and stated that the purpose of the fax was to allow LME to "keep computer records for terminal accidents-injuries etc." The cover sheet requested that the terminal managers "[p]lease review [the] list for your terminals[;] add or delete accordingly." Attached to the cover sheet was a five-page list of the names and social security numbers of 204 LME employees.[2]

Shortly after LME disseminated the list, head Union Steward John Tonsager confronted Frame and LME President Peter Martin (Martin) about the dissemination of sensitive employee information and expressed his concern about identity theft. On May 1, 2001, Martin sent a letter to LME employees notifying them of the January 4 transmission. In the letter, Martin apologized for LME's mistake in sending the list to the other terminals and

---

1. Specifically, the complaint alleged, in relevant part:

7. That on January 4, 2001, the Safety Director of LME, William Lowell Frame, sent via facsimile a memo listing the names of 204 LME employees along with their social security numbers to the terminal managers of 16 different trucking terminals throughout the upper Midwest.
* * * *
10. That upon information and belief the private information has not been redacted or erased and is still being shared or is accessible in general.
* * * *
18. That LME violated the privacy rights of each of the Class members by disseminating their social security numbers to 16 different trucking terminals throughout the

upper Midwest. That these Class members have an inherent privacy interest in their social security numbers, and the harm that can be inflicted on the Class members from the disclosure of their social security numbers to an unscrupulous individual is alarming and potentially financially ruinous.

2. The list of social security numbers is not part of the record. Respondents intended to file it under seal, but before they could bring a motion to have the list filed under seal, the district court dismissed the action. However, the fact that the list existed and was faxed as alleged is to be accepted as true in reviewing the Rule 12 dismissal. *See Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 292 (Minn. 1978).

reported that the terminal managers were instructed to destroy or return the list immediately. Martin indicated that his instructions had been followed and that, as far as he knew, the terminal managers had not shared the information with anyone.

On or about September 6, 2001, respondents filed a class action lawsuit on behalf of themselves and all class members alleging that LME's dissemination of their social security numbers to the 16 terminal managers constituted an invasion of their right to privacy.

LME moved for dismissal of this action under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief may be granted. The district court determined that the dissemination did not constitute "publicity" under a claim for publication of private facts and granted LME's motion to dismiss. The court of appeals reversed and remanded, holding that "[a]n actionable situation requires a level of publication that unreasonably exposes the appellant to significant risk of loss under all the circumstances," and concluding that the appropriate consideration includes the nature of the private fact and the harm to which the plaintiff is exposed as a result of the dissemination as well as the breadth of disclosure. *Bodah v. Lakeville Motor Express, Inc.*, 649 N.W.2d 859, 866 (Minn. App.2002).

In reviewing cases involving dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(e), the question before the appellate court is whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997). The standard of review is therefore de novo. *See Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) ("[A]n appellate court need not give deference to a trial court's decision on a legal issue.").

The reviewing court must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party. *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 292 (Minn. 1978).

In *Lake v. Wal–Mart Stores, Inc.*, this court adopted three separate causes of action which are generally referred to as the tort of invasion of privacy: intrusion of seclusion, appropriation of a name or likeness of another, and publication of private facts. 582 N.W.2d 231, 236 (Minn.1998). The rationale behind recognizing the tort of invasion of privacy is that "[t]he right to privacy is an integral part of our humanity; one has a public persona, exposed and active, and a private persona, guarded and preserved. The heart of our liberty is choosing which parts of our lives shall become public and which parts we shall hold close." *Id.* at 235. According to *Lake*, to state a claim for publication of private facts, a plaintiff must demonstrate that one " 'gives publicity to a matter concerning the private life of another * * * if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' " *Id.* at 233 (quoting Restatement (Second) of Torts, § 652D). The *Lake* court did not define "publicity." *See C.L.D. v. Wal–Mart Stores, Inc.*, 79 F.Supp.2d 1080, 1083 (D.Minn.1999) ("[R]elevant Minnesota cases offer no guidance regarding what facts an invasion of privacy tort claimant must allege in order to satisfy the burden of showing that 'publicity' or 'publication' of private information has occurred. * * * *Lake* thus conferred upon other courts the task of defining the contours of these newly recognized causes of action.").

Under the Restatement, " '[p]ublicity' * * * means that the matter is made pub-

lic, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." [3] Restatement (Second) of Torts § 652D cmt. a. The Restatement distinguishes "publicity" for purposes of invasion of privacy from "publication" for defamation:

> "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. * * * The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

*Id.* For example, as the Restatement illustrates, the posting of a statement in a shop window, where it is read by passers-by, that a customer owes a debt, constitutes "publicity" under the Restatement. *Id.* at cmt. a, illus. 2.; *see also Purdy v. Burlington N. & Santa Fe Ry. Co.,* No. 98–833, slip op. at 6 (D.Minn. Mar. 28, 2000) (concluding that if Purdy were to publish 800 employees' salaries and social security numbers on the Internet, the employees would likely succeed on an invasion of privacy claim); *Brents v. Morgan,* 221 Ky. 765, 299 S.W. 967, 968, 971 (1927) (exemplifying "publicity" under the Restatement—posting a 5-by 8-foot notice calling attention to a customer's overdue account in a show window of an automobile garage constitutes publicity); *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892, 898 (Mo.1959) (holding that loud declarations of indebtedness in a public restaurant constituted "publicity"). By contrast, where defendants threatened to disseminate a "Dead–Beat Parent" poster to the public at large but in fact only delivered the poster to the plaintiff's employer and a few close relatives, distribution to this "handful of people" was insufficient to constitute "publicity." *Jones v. United States Child Support Recovery,* 961 F.Supp. 1518, 1520–21 (D.Utah 1997); *see also Hendry v. Conner,* 303 Minn. 317, 319, 226 N.W.2d 921, 922–23 (1975) (concluding, pre-*Lake,* that statement made by hospital credit department employee in loud voice in the presence of people in waiting room that plaintiff's child could not be admitted to the hospital unless an outstanding bill was paid would not constitute "publicity").

LME maintains that the dissemination by fax of a list of 204 employee names and social security numbers to 16 associated or related terminal managers in six states and the allegation that the private information is being shared or is accessible in general does not constitute "publicity" to

---

**3.** The "publicity" required for the invasion of privacy tort of false light publicity is identical to that required for publication of private facts. *See* Restatement (Second) of Torts § 652E cmts. a, b, illus. 1–5 (1977) [the Restatement refers the reader to comment a of § 652C which we believe should read § 652D].

support an invasion of privacy claim. Specifically, because the complaint does not allege that the dissemination of the numbers was to the public at large or that the disclosure involved so many people that the numbers were substantially certain to become public knowledge, as required by the Restatement, it fails to allege the requisite "publicity." LME also argues that the court of appeals should be reversed because it "further modified the law" by inappropriately "shifting the burden of proof" of the prima facie case to LME to show "that LME took reasonable steps to contain the dissemination of the social security numbers and that such steps were effective." LME refers to the court's closing paragraphs:

At this stage in the litigation, it is impossible to determine what happened. * * * Through affidavits, depositions, or, if necessary, witnesses at a trial, respondent can easily define the practices in the terminals and what occurred with the information. That would shift the burden back to the appellants to show either widespread dissemination or improper use.

The district court is in the best position to determine whether actionable publication occurred. The publicity requirement in this case, where the dissemination was not for profit or with malicious intent, ought to be whether it unreasonably exposed appellants to a significant risk that their social security numbers would be misused.

*Bodah,* 649 N.W.2d at 866–67.

Respondents contend that their complaint alleges sufficient "publicity" to defeat LME's Rule 12.02(e) motion. Respondents point to various facts: that LME

disseminated the names and social security numbers to 16 trucking terminals[4] across six states, that it is unknown whether the numbers were treated as confidential information after they were received because there was no warning to that effect on the fax cover sheet, that LME did not take action for as long as four months after the dissemination, and that the numbers may not have yet been redacted or destroyed. Furthermore, respondents embrace the court of appeals' unique approach to defining "publicity" which looks not only at the breadth of disclosure but also at "the nature of the private data and the damage [implicated by its disclosure]." *Bodah,* 649 N.W.2d at 866.

We first address LME's argument that the court of appeals should be reversed because it inappropriately shifted the burden of proof to LME. We agree with LME that the plaintiff carries the burden to prove that "publicity" of private facts has occurred. *See C.L.D.,* 79 F.Supp.2d at 1084, 1085–86. However, we do not interpret the court of appeals' language, quoted above, to indicate that the burden for the prima facie case shifts to the defendant, here LME. Rather, it appears to us that the court was suggesting that LME could have converted the respondents' Rule 12.02(e) motion into a motion for summary judgment by producing matters outside the pleadings or that, if the case were to move forward and respondents were to move for summary judgment, they would be entitled to summary judgment if LME failed to present specific facts disproving the "publicity." *See* Minn. R. Civ. P. 12.02; 56.03; 56.05.

We now turn to the "publicity" element of the tort of publication of private facts.

4. Respondents allege that the information was disseminated to 16 "terminals," but the fax was sent to the attention of "terminal managers." Furthermore, paragraph 7 of their complaint alleges that the social security numbers were sent "to the terminal managers."

At the outset, we choose not to embrace the court of appeals' approach to defining "publicity." The court of appeals' hybrid approach uses the Restatement's breadth of disclosure analysis but adds as an additional factor "the nature of private data and the damage." *Bodah*, 649 N.W.2d at 866. Using both factors, the court of appeals fashioned a narrow publicity requirement under the facts of this case: "where the dissemination was not for profit or with malicious intent, [the publicity requirement] ought to be whether [the dissemination] unreasonably exposed appellants to a significant risk that their social security numbers would be misused." *Id.* at 867. We think this definition emasculates the distinction between public and private by suggesting that "publicity" can be established by "either widespread dissemination *or improper use.*" *Id.* (emphasis added). Furthermore, by looking to the nature of the private data as part of the "publicity" element, the court blurs the distinction between the "publicity" element and the other elements of the tort of publication of private facts which require that the private data "not [be] of legitimate concern to the public" and that the publicity be "highly offensive." Restatement (Second) of Torts § 652D; *see also Bodah*, 649 N.W.2d at 866. Finally, a lack of reasonableness is neither an element of the invasion of privacy tort of publication of private facts nor part of the publicity analysis. As such, the court of appeals' determination that "[a]n actionable situation requires a level of publication that unreasonably exposes the appellant to significant risk of loss under all the circumstances" inappropriately emphasizes the reasonableness of the defendant's actions.[5] *Bodah*, 649 N.W.2d at 866.

We also reject the "special relationship" or "particular public" approach taken by some jurisdictions. These jurisdictions have concluded that certain situations— where there is a special relationship between the plaintiff and the public—warrant departure from the Restatement's stringent publicity requirement. *See, e.g., McSurely v. McClellan*, 753 F.2d 88, 112, 113 (D.C.Cir.1985) (holding that publication of private facts "may be satisfied by proof of disclosure to a very limited number of people when a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed," and concluding that the publicity element was satisfied where the wife's private papers discussing her premarital behavior were disclosed to her spouse); *Miller v. Motorola, Inc.*, 202 Ill.App.3d 976, 148 Ill.Dec. 303, 560 N.E.2d 900, 903 (1990) ("Where a special relationship exists between the plaintiff and the 'public' to whom the information has been dis-

---

**5.** Indeed, if an unauthorized transmission of private data actually resulted in pecuniary loss due to identity theft, a plaintiff may be able to bring a negligence action. *See Funchess ex rel. Haynes v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001) (listing the four elements of a negligence claim: "(1) the existence of a duty of care, (2) breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury"). Likewise, a plaintiff may have a cause of action for negligent infliction of emotional distress if, because private information was shared, the plaintiff suffered severe emotional

distress with accompanying physical manifestations. *See Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 408 (Minn.1998) ("To establish a claim for negligent infliction of emotional distress, a plaintiff must show that she was within a zone of danger of physical impact, reasonably feared for her safety, and suffered severe emotional distress with accompanying physical manifestations."); *see, e.g., Navarre v. S. Washington County Sch.*, 633 N.W.2d 40 (Minn.App.2001), *aff'd in part, rev'd in part, and remanded*, 652 N.W.2d 9 (Minn.2002).

closed, the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people. * * * Plaintiff's allegation that her medical condition was disclosed to her fellow employees sufficiently satisfies the requirement that publicity be given to the private fact."); *Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522, 531 (1977) (holding a disclosure made to a "particular public" with a special relationship to the plaintiff, such as co-workers, family, or neighbors, could be actionable), *overruled in part on other grounds by Bradley v. Saranac Cmt. Sch. Bd. of Educ.*, 455 Mich. 285, 565 N.W.2d 650, 658 (1997).

■ We decide, instead, to adopt the Restatement definition of "publicity." We conclude, therefore, that "publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. In doing so, we have considered whether there are legitimate or compelling reasons of public policy that justify imposing liability for egregious but limited disclosures of private information. We conclude, nevertheless, that the Restatement's publicity requirement best addresses the invasion of privacy cause of action—absent dissemination to the public at large, the claimant's "private persona" has not been violated. *See Lake*, 582 N.W.2d at 235.

■ Furthermore, we think the Restatement definition appropriately limits the publication of private facts cause of action. Though much has been written on the subject, we reflect on the concerns of Samuel Warren and Justice Louis Brandeis—"the evil of the invasion of privacy by the newspapers" and "whether our law will recognize and protect the right to privacy in this and in other respects"—and Warren's and Brandeis' recognition of limitations to this right. Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L.Rev. 193, 195, 196, 214–19 (1890). These concerns provided the foundation for all four invasion of privacy torts but resonate particularly with the tort of publication of private facts. William L. Prosser, *Privacy*, 48 Cal. L.Rev. 383, 383–89 (1960) (tracing the evolution of the four invasion of privacy torts). As Warren and Brandeis noted more than 100 years ago:

> The design of the law must be to protect those persons with whose affairs the community has no legitimate concern, from being dragged into an undesirable and undesired publicity and to protect all persons, whatsoever; their position or station, from having matters which they may properly prefer to keep private, made public against their will.

Warren & Brandeis, *supra*, at 214–15. We understand the tort of publication of private facts to focus on a very narrow gap in tort law—to provide a remedy for the truthful but damaging dissemination of private facts, which is nonactionable under defamation rules. *See Britton v. Koep*, 470 N.W.2d 518, 520 (Minn.1991) ("The elements of a cause of action for defamation include a false and defamatory statement about the plaintiff * * *."); *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 687 (Ind. 1997) ("Defamation rules apply * * * only to statements that are false as well as defamatory."). The Restatement's definition of "publicity," which requires a broad reach, constrains the tort of publication of private facts.

■ We turn now to the application of the Restatement's publicity requirement to the instant facts. We conclude that respondents' claim that LME disseminated 204 employees' social security numbers to 16 terminal managers in six states does not constitute publication to the public or to so large a number of persons that the

matter must be regarded as substantially certain to become public. *See, e.g., C.L.D.,* 79 F.Supp.2d at 1084 (concluding that disclosure of private facts to only a few employees did not constitute publication); *Dancy v. Fina Oil & Chem. Co.,* 3 F.Supp.2d 737, 740 (E.D.Tex.1997) (finding insufficient publication where "the allegedly publicized facts, at worst, were made known to some workers in the refinery"); *Kuhn v. Account Control Tech., Inc.,* 865 F.Supp. 1443, 1448 (D.Nev.1994) (concluding that no "publicity" existed where dissemination of information regarding Kuhn's indebtedness was to a small group of co-workers); *Lewis v. Snap–On Tools Corp.,* 708 F.Supp. 1260, 1262 (M.D.Fla. 1989) ("The mere conclusory allegation that the alleged disclosure was to 'large numbers of persons' does not meet the requirement that the publication be to the general public * * *."); *Wells v. Thomas,* 569 F.Supp. 426, 437 (E.D.Pa.1983) (determining that publication to community of employees at staff meetings "and discussions between defendants and other employees" does not constitute "publicity"); *Doe,* 690 N.E.2d at 692 (concluding that the disclosures to co-workers that plaintiff was HIV-positive did not satisfy the publicity element); *Eddy v. Brown,* 715 P.2d 74, 78 (Okla.1986) (holding that disclosure that plaintiff was undergoing psychiatric treatment to a limited number of co-workers was not "publicity"); *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327 A.2d 133, 137 (1974) (concluding there was no "publicity" where four persons—three relatives and one employer—were notified of plaintiff's indebtedness).

■ We likewise conclude that respondents' allegation that the information "is still being shared or is accessible in general" fails to aver "publicity." A similar case, *Beverly v. Reinert,* 239 Ill.App.3d 91, 179 Ill.Dec. 789, 606 N.E.2d 621 (1992), supports our conclusion. In *Beverly,* the defendant, who filed a third-party complaint for invasion of privacy, alleged that private matters were disseminated by fax and reached members of the public, including: secretaries in two lawyers' offices, the plaintiff's brother, unknown individuals in the school district office or in the plaintiff's brother's insurance office and in the office of one of the lawyers. *Id.* at 624. He also alleged that the faxes had been "intercepted by persons whose personal computers were equipped to enable them to receive such transmissions." *Id.* The court affirmed dismissal of the claim:

> The defendant did not sufficiently allege the *public* disclosure of private facts. We need not plunge into a discussion of the comparative reliability of mail and fax communications. In this regard, the defendant has alleged no more than the *possibility* that unknown individuals might have accidentally received or perhaps eavesdropped upon the otherwise private and confidential communications between the plaintiff's attorney and the defendant's attorney. Such possible interception by nobody in particular [does not constitute] disclosure to the public (as the Restatement requires) * * *.

*Id.* at 626.

In this case, respondents make a general allegation that the social security numbers have "not been redacted or erased and [are] still being shared or [are] accessible in general." Yet attached to the complaint is the May 1, 2001 letter, written by LME's president, indicating that the faxed list of social security numbers has been returned or destroyed and not shared with anyone. Thus, the allegation that the social security numbers are still being shared or are generally accessible is mere speculation. We hold that the court of appeals erred in reversing the dismissal of the complaint because the facts, as alleged, do

not support the conclusion that there is "publicity" to withstand a Rule 12.02(e) motion.

Reversed.